IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| GABRIEL STEELE, Individually, as Executor of the Estate of Autumn Steele, and as Next of Friend for his Minor Child G.S.; SEAN SCHOFF, as Next of Friend for his Minor Child K.S.; and GINA COLBERT, Individually,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF BURLINGTON, IOWA, and JESSE HILL,<br><br>    Defendants. | No. 3:16-cv-00105 – JEG<br><br>O R D E R |

This matter is before the Court on a Motion to Dismiss (the Motion) by Defendants City of Burlington and Jesse Hill (jointly, Defendants) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Gabriel Steele (Gabriel), executor of the estate of decedent Autumn Steele (Autumn), and next of friend of G.S., his minor child; Sean Schoff, as next of friend for his minor child, K.S.; and Gina Colbert (Gina) (jointly, Plaintiffs), resist. The parties have not requested a hearing, and the Court finds a hearing is unnecessary. The Motion is fully submitted and ready for consideration.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

On January 6, 2015, Hill responded to a 911 call reporting a domestic dispute at the Steele residence in Burlington, Iowa. Before arriving, Hill was informed that Autumn's presence at the residence violated a restraining order. When Hill arrived, he saw Autumn and Gabriel arguing in

---

[1] "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).

front of the home while Gabriel held G.S., their three-year-old son.  Hill advised dispatch of what he saw, activated his body camera, and exited the car, walking toward Autumn and Gabriel.

As Hill moved toward Autumn, he was approached by the family's pet dog, a collie/German shepherd mix.  Hill fired his service weapon in the dog's direction.  At the time Hill fired his weapon, Gabriel, Autumn, and G.S. were within four feet of the dog and standing in the same direction.  As Hill fired the first shot, he lost his balance and fell backward, but continued to fire his weapon.  Autumn was hit by at least one of the bullets and died from her injuries.  The City of Burlington later determined that the family dog was not vicious.

On November 14, 2016, Plaintiffs filed this lawsuit against Hill and the City of Burlington.  Count I is against both Defendants and alleges use of excessive force in violation of the Fourth Amendment to the U.S. Constitution and of Article I, Section 8 of the Iowa Constitution.  Count II is against both Defendants and alleges a violation of Plaintiffs' right to substantive due process under the Fourteenth Amendment to the U.S. Constitution and of Article I, Section 9 of the Iowa Constitution.  Count III is against the City of Burlington and alleges failure to train in violation of the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Iowa Constitution.  Counts IV through IX of the complaint are against Hill and the City of Burlington and allege claims under Iowa common law for negligence resulting in wrongful death, bystander emotional distress, and loss of consortium.  On January 3, 2017, Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' federal constitutional claims in Counts I through III.

## II. DISCUSSION

### A. Jurisdiction[2]

Because Plaintiffs bring Counts I through III under a federal statute, 42 U.S.C. § 1983, which provides relief based on violations of the United States Constitution, this Court has original jurisdiction over the federal claims asserted in Counts I through III pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367, because the claims arise out of the same nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this District.

### B. Standard for Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to

---

[2] Defendants assert tangentially that Plaintiffs other than the estate of Autumn Steele lack standing to press federal constitutional claims based on the allegations in the complaint, raising the issue in an ambiguous footnote to their brief. The Court responds with commensurate brevity. Although the issue was only summarily addressed by Defendants, Plaintiffs apparently were not misled and responded to the standing issue. Within this relatively unusual scenario and a seemingly more complex legal structure than suggested by Defendants' footnote, the Court ultimately concludes on this record that Plaintiffs have standing. The constitutional minimum of standing requires an "injury in fact," a causal connection between the injury and the conduct complained of, and a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). All Plaintiffs have alleged actual injuries (e.g., a non-derivative loss of the familial relationship with Autumn and being subjected to unreasonable force during a seizure). These injuries are fairly traceable to Defendants' conduct (e.g., Hill's conduct responding to the 911 call). The injuries are redressable because Plaintiffs have demanded monetary damages therefor under § 1983. See Cuellar–Aguilar v. Deggeller Attractions, Inc., 812 F.3d 614, 621 (8th Cir.2015) ("[T]he availability of statutory damages show[s] that the plaintiffs' injury [is] redressable."). The Court separately addresses Plaintiffs' individual abilities to maintain claims under the Fourth Amendment on page six, *infra*.

dismiss, courts "must take all of the factual allegations in the complaint as true," but "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[D]etailed factual allegations" are not required, but the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (second alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

On a motion to dismiss for failure to state a claim, the question for the Court is not whether Plaintiffs will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 530 (2011) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002)); see also id. ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory."). While Twombly's plausibility standard is not a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Court must be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer, 416 U.S. at 236). Further, a court must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Whitney v. Guys,

Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citation and internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### C. Fourth Amendment: Excessive Force

Section 1983 provides a private right of action against a person who, under color of state law, deprives the plaintiff of rights secured by the United States Constitution or federal law. See 42 U.S.C. § 1983. As the Supreme Court reiterated in Graham v. Connor, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)). For that reason, "[t]he validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." Id. at 394. "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id. (second and third alterations in original) (quoting U.S. Const. amend. IV). Therefore, claims of excessive force during a search or seizure must be analyzed under the "objective reasonableness" standard of the Fourth Amendment. Id. at 395. As Graham makes clear, whether an official has used unconstitutionally excessive force is a question separate from, and dependent on, whether that official's actions constitute a seizure for purposes of the Fourth Amendment. A plaintiff must first establish that a Fourth Amendment seizure occurred, and

further establish that the seizure was unreasonable. Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999).

### 1. Whether All Plaintiffs can Maintain a Fourth Amendment Claim

A plaintiff may not vicariously assert the Fourth Amendment rights of third parties. Alderman v. United States, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."). The complaint alleges that during the encounter with Hill, the only Plaintiffs present were Gabriel, Autumn, and G.S. There is no allegation that Sean Schoff, K.S., or Gina were personally subjected to an unreasonable seizure. Because Fourth Amendment rights are personal rights, Sean Schoff, K.S., and Gina cannot maintain a claim for unreasonable seizure in contravention of the Fourth Amendment. The Fourth Amendment claims in Counts I and III of the complaint must therefore be dismissed as to those Plaintiffs.

Conversely, because the complaint alleges Gabriel and G.S. were present on the scene when the alleged shooting took place, the complaint permits a reasonable inference that those parties, in addition to Autumn, were subjected to a Fourth Amendment seizure. Therefore, the complaint adequately alleges violations of the Fourth Amendment rights of each of Gabriel and G.S., in addition to Autumn, because those Plaintiffs do not vicariously assert the constitutional rights of a third party and because the standing requirements are otherwise satisfied.

### 2. Whether the Remaining Plaintiffs Have Pleaded a "Seizure"

"A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). A person is actually seized "if, in view of all [] the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave." United States v. Grant, 696 F.3d 780, 784 (8th Cir. 2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 215 (1984)). "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." Michigan v. Chesternut, 486 U.S. 567, 573 (1988).

In United States v. Mendenhall, 446 U.S. 544, 554 (1980), the Supreme Court articulated several factors relevant to whether a seizure has occurred. These factors include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. at 554; accord United States v. Mabery, 686 F.3d 591, 596 (8th Cir. 2012). "Determining which police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case." United States v. Griffith, 533 F.3d 979, 983 (8th Cir. 2008).

"Although seizure requires restraint of an individual's liberty, not every government act resulting in a restraint of an individual's liberty constitutes a seizure." McCoy, 342 F.3d at 846-47 (citing Brower v. Cty. of Inyo, 489 U.S. 593, 596-97 (1989)). For example, for a seizure to be cognizable under the Fourth Amendment, the party effecting the seizure generally must do so intentionally:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . ., nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement. . ., but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

Brower, 489 U.S. at 596-97; see also id. at 596 ("[T]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct."). Therefore, the Fourth Amendment does not encompass situations in which a bystander is accidentally harmed during an otherwise lawful seizure. See Moore v. Indehar, 514 F.3d 756, 760 (8th Cir. 2008) ("[B]ystanders are not seized for Fourth Amendment purposes when struck by an errant bullet in a shootout.") (collecting cases). Here, the complaint alleges that Hill fired his weapon apparently intending to shoot Plaintiffs' dog and unintentionally struck the decedent with one or more bullets. Thus it is insufficient to allege that Autumn was seized for purposes of the Fourth Amendment simply by being struck by an errant bullet.

Nevertheless, the complaint alleges intentional conduct apart from the shooting that could amount to a seizure for purposes of the Fourth Amendment. The Court determines the objective reasonableness of an officer's actions based upon intentional conduct rather than its unintended consequences. See McCoy, 342 F.3d at 848 (analyzing an accidental shooting that occurred when a police officer slipped on ice while chasing a suspect, and stating that the relevant inquiry was not whether the officer's act of accidentally firing his gun was objectively reasonable, "but whether, under the totality of the circumstances, his act of drawing his gun was 'objectively reasonable.'"). As a result, the facts alleged in the complaint fall into the purview of the Fourth Amendment if Hill's *intentional* conduct amounted to an unreasonable seizure, even if the shooting itself does not. The complaint alleges several intentional acts by Hill that are relevant to determining whether Plaintiffs were seized. Given these allegations, the Court must address two questions: first, whether the allegations support a reasonable inference that Plaintiffs were seized; and second, whether the allegations support a reasonable inference that the seizure was objectively unreasonable.

The complaint states that Hill arrived on the scene in response to a 911 call reporting a domestic dispute, and that Autumn and Gabriel were arguing outside when Hill arrived. The

complaint states that Hill approached the two in the midst of the argument with his body camera activated, and that Autumn was shouting at Gabriel even as she was approached by Hill. At some point while approaching the couple, Hill drew his firearm, apparently intending to shoot the family dog, which was approaching Hill. The complaint alleges that Hill's target was a mere four feet away from Gabriel, Autumn, and G.S., and in the same direction. The display of Hill's firearm in these circumstances is clearly relevant under Mendenhall as to whether Plaintiffs were seized during their encounter with Hill. The alleged facts permit an inference that a reasonable person in Gabriel, Autumn, and G.S.'s position would not feel free to leave the encounter with Hill. Thus, Plaintiffs have pleaded sufficient facts to permit a reasonable inference that there was a Fourth Amendment seizure.

Having pleaded these facts, the complaint has gone beyond an assertion of mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," see Twombly, 550 U.S. at 555, and has alleged "facts sufficient to show that [the] claim has substantive plausibility," see Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014) (per curiam). It is not proper on a motion to dismiss for the Court to determine the likelihood that Plaintiffs will succeed on the claim, especially in light of the "fact intensive" inquiry required to determine whether Plaintiffs were seized by Hill's conduct on the scene. See Griffith, 533 F.3d at 983. Plaintiffs allegations, germane to determining a seizure under Mendenhall and plausible given Hill's alleged decision to wield and fire his weapon mere feet from Gabriel, Autumn, and G.S. are sufficient to pass the federal court's threshold.

### 3. Whether the Complaint Supports an Inference that the Seizure was Unreasonable

The test for excessive force in violation of the Fourth Amendment is whether the force used in a seizure was objectively reasonable in light of the facts and circumstances. Graham, 490 U.S. at 397. The reasonableness of an officer's use of force is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.

The inquiry is an objective one and does not take into account the officer's "underlying intent or motivation." Id. at 397. Therefore, to withstand a motion to dismiss, Plaintiffs allege facts that support a reasonable inference that Hill's alleged seizure was objectively unreasonable.

Because the constitutional inquiry focuses on the reasonableness of Hill's intentional conduct, the Court focuses on whether it was objectively reasonable for Hill to draw his firearm to shoot at the dog, given the circumstances. The reasonableness of Hill's decision to draw his firearm in effecting a seizure is relevant to the Fourth Amendment analysis here because the inquiry into excessive force focuses on the "means intentionally applied" to effectuate a seizure — here, Hill's drawing and using his firearm. McCoy, 342 F.3d at 847-48 (stating that when an officer slipped on ice and accidentally shot a suspect, the relevant inquiry "whether, under the totality of the circumstances, his act of drawing his gun was 'objectively reasonable.'"). As the Supreme Court explained in Brower,

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

489 U.S. at 598-99.

Although there is a dearth of authority that addresses the unusual facts presented here, several courts, including the Eighth Circuit, have considered the reasonableness of an officer's decision to draw his weapon and shoot or kill a pet dog in the context of Fourth Amendment seizures of property. See, e.g., Lesher v. Reed, 12 F.3d 148, 150 (8th Cir.1994) (concluding that officers removal of a pet dog from the family's home to have the animal killed did constitute a seizure and therefore the animal's owners had stated a claim under the Fourth Amendment). These cases provide a starting point to evaluate the reasonableness of Hill's conduct. "Every circuit that has considered the issue has held that the killing of a companion dog constitutes a

'seizure' within the meaning of the Fourth Amendment." Viilo v. Eyre, 547 F.3d 707, 710 (7th Cir. 2008) (collecting cases from the Third, Fourth, Seventh, Eighth, and Ninth Circuits).  As the District of Columbia Circuit recently observed, "[t]hose circuits have invariably concluded that 'the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable.'" Robinson v. Pezzat, 818 F.3d 1, 7 (D.C. Cir. 2016) (quoting Viilo, 547 F.3d at 710).  The Sixth Circuit also recently held that a police officer's "use of deadly force against a dog . . . is reasonable under the Fourth Amendment when, given the totality of the circumstances and viewed from the perspective of an objectively reasonable officer, the dog poses an imminent threat to the officer's safety."  Brown v. Battle Creek Police Dep't, 844 F.3d 556, 568 (6th Cir. 2016); see also Robinson, 818 F.3d at 7 (same); Brown v. Muhlenberg Twp., 269 F.3d 205, 211 (3d Cir. 2001) ("[The state may not,] consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody.").

Under the reasonableness standard articulated above, to show that the complaint fails to state a claim, Defendants must show, accepting the facts in the complaint as true, that the dog posed an imminent threat to Hill's safety and therefore that Hill acted reasonably as a matter of law.  Here, it is not apparent on the face of the complaint that the dog posed an imminent threat to Hill's safety, which is material in determining whether Hill acted reasonably in drawing his weapon and then attempting to shoot the animal.  Therefore, viewing the factual allegations as true, the Court cannot determine on this record whether Hill's actions were or were not objectively reasonable.

Of course, it does not necessarily follow that when a police officer unreasonably seizes a dog during an encounter, bystanders are also thereby unreasonably seized.  Yet the standard set forth in the above cases is illustrative as to whether, generally speaking, Hill acted in an objectively reasonable manner in attempting to seize the dog, which is relevant as to whether it

was appropriate for Hill to wield a gun as he approached Plaintiffs. In addition, it is relevant that the complaint alleges that dog, Hill's intended target, was within four feet of Gabriel, Autumn, and G.S. There is no heightened pleading standard for claims under § 1983. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). It is inappropriate at the pleading stage, where Plaintiffs have alleged facts germane to the objective reasonableness of Hill's conduct, to make the fact-intensive determination that Hill's actions were objectively reasonable as a matter of law. Cf. Malone v. Hinman, 847 F.3d 949, 953 (8th Cir. 2017) ("Once the predicate facts are established, the reasonableness of [an officer's] conduct under the circumstances is a question of law.") (quoting Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001)). Defendants' motion to dismiss these Plaintiffs' Fourth Amendment claims must be denied.

### D. Fourteenth Amendment: Substantive Due Process Claim

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14, § 1. "The Fourteenth Amendment guarantees '[s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (en banc) (alterations in original) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)); accord Mendoza v. U.S. Immigration & Customs Enf't, 849 F.3d 408, 421 (8th Cir. 2017). "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128 (1992)).

The standard for determining whether certain conduct is "conscience-shocking" depends on the facts of the case. "Although proof of intent to harm is usually required, in certain cases

proof of deliberate indifference will satisfy this substantive due process threshold." Estate of Johnson v. Weber, 785 F.3d 267, 272 (8th Cir. 2015) (citing Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (en banc)). "The deliberate indifference standard 'is sensibly employed only when actual deliberation is practical.'" Larson, 396 F.3d at 978 (quoting Lewis, 523 U.S. at 851) (citation omitted). "By contrast, the intent-to-harm standard most clearly applies 'in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" Id. (quoting Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir.2000)).

Given the complaint's allegations, there can be no reasonable inference that deliberation was practical at the time of the shooting.[3] Hill arrived on the scene in response to an emergency call reporting a domestic disturbance, and that Autumn's presence there violated a restraining order. As Hill approached, Autumn was shouting at Gabriel. At the same time, the dog approached Hill, at which point Hill decided to shoot the dog. These facts plainly do not present a scenario that provided "the luxury of calm and reflective deliberation." Neal, 217 F.3d at 958. As the Eighth Circuit has observed, "[d]omestic disturbances are 'notoriously volatile and unpredictable,'" and require officers responding at the scene "to quell violence, protect children, and assist anyone who is injured." Larson, 396 F.3d at 979 (quoting Elwood v. Rice Cty., 423 N.W.2d 671, 678 (Minn. 1988)). The complaint cannot reasonably be read to indicate Hill expected to be approached by the dog on the scene, and therefore Hill was required to judge in that moment whether the dog posed a threat. "[W]here unforeseen circumstances demand an instant judgment on the part of an officer who feels the pulls of competing obligations, only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the

---

[3] Although Plaintiffs allege that Hill had the opportunity to deliberate, this is a legal conclusion couched as a factual allegation that the court is not bound to accept as true. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

shocks-the-conscience test." Lewis, 523 U.S. at 834. Therefore, the intent-to-harm standard applies to Plaintiffs' substantive due process claims.

Because the complaint does not permit a reasonable inference that Hill intended to harm Autumn, Plaintiffs cannot maintain a substantive due process claim under the Fourteenth Amendment. The facts of the complaint illustrate clearly that Hill intended to shoot the dog, but lost his balance and shot Autumn instead. "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Lewis, 523 U.S. at 849. Rather, intentional conduct violating the Fourteenth Amendment must be "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Truong v. Hassan, 829 F.3d 627, 631 (8th Cir. 2016). The Court cannot infer that Hill's alleged shooting of Autumn was intentional, nor inspired by malice or sadism, and therefore the substantive due process claim must be dismissed.

### E.  Claims against the City of Burlington

Defendants argue that the City of Burlington Police Department is entitled to dismissal of Plaintiffs' federal constitutional claims in Counts I through III because Plaintiffs have failed to adequately allege such claims against Hill, and because the City of Burlington is not alleged to have independently violated any Plaintiff's constitutional rights. Plaintiffs concede that they must prevail against Hill for the City of Burlington to be held liable. Therefore, Plaintiffs' federal constitutional claims must be dismissed as to the City of Burlington to the same extent that they must be dismissed as to Hill.

## III.  CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted, ECF No. 7, must be **granted in part and denied in part**. Plaintiffs' Fourth Amendment claims in Counts I and III must be **dismissed** with respect to Plaintiffs Sean

Schoff, K.S., and Gina only, and Plaintiffs' Fourteenth Amendment claims in Count II must be **dismissed** as to all Plaintiffs. The motion must be in all other respects **denied**.

   **IT IS SO ORDERED.**

Dated this 8th day of May, 2017.

_____
JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT